925 F.2d 1480
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MILLBURN MARKETING ASSOCIATES and Pharmaceutical
Innovations, Inc., Plaintiffs-Appellants,
v.
PARKER LABORATORIES, INC., Defendant-Appellee.
 No. 90-1159.
 United States Court of Appeals, Federal Circuit.
 Jan. 31, 1991.
 
 Before PLAGER, Circuit Judge, BENNETT, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 PLAGER, Circuit Judge.
 
 
 1
 This is an appeal from orders of the United States District Court for the District of New Jersey, Millburn Mktg. Assocs. v. Parker Laboratories, Inc., No. 88-575 (MTB) (D.N.J. June 30, 1989) (Millburn I ) and Millburn Mktg. Assocs. v. Parker Laboratories, Inc., No. 88-575 (MTB) (D.N.J. Dec. 21, 1989) (Millburn II ). In Millburn I, the court granted partial summary judgment in favor of Defendant-Appellee Parker Laboratories, Inc. (Parker Labs) holding that certain conductive liquid spray products that it markets for use as skin preparations in stress and electrocardiogram testing do not, as currently labeled, induce infringement of U.S. Patent No. 4,465,074 ('074). In Millburn II, the court granted summary judgment in favor of Parker Labs holding the '074 patent invalid based upon the inventor's failure to meet the best mode requirement under 35 U.S.C. Sec. 112 (1988). We reverse both grants of summary judgment and remand for trial on the merits.
 
 OPINION
 A. Infringement
 
 2
 Claim 1 of the '074 patent recites, inter alia, "[a] method for applying a plurality of electrodes to the skin of a patient, ... comprising the steps of applying a thin film of a physiologically compatible conductive liquid to ... [said] skin ... and applying a plurality of electrodes to said skin via said thin film...." Claim 8, the other independent claim in the '074 patent, uses similar language. In Millburn I, the district court interpreted the claims to require that the film be continuous and uniform. The court found that, by contrast, Parker Labs products could be applied to separate electrode sites on the skin and that even if some overlap between sites did occur, this would not create a continuous, uniform film. The court further found that the instructions currently used by Parker Labs did not instruct the user to create even a continuous film. Thus, the court granted summary judgment in favor of Parker Labs on the issue of inducement based on the instructions currently used by Parker Labs.
 
 
 3
 Plaintiffs-Appellants Millburn Marketing Associates and Pharmaceutical Innovations, Inc. (Millburn) argue that the court improperly interpreted the claims by adding the requirement that the film be continuous and uniform. They further argue that even if the claims should be construed as requiring a continuous, uniform film, the actual use of the Parker products, consistent with Parker's directions, involves a continuous, uniform film.
 
 
 4
 The claims at issue do not speak of a "continuous, uniform" film, but only of a "thin" film of liquid. In its opinion, the district court indicated that it read the terms "continuous and uniform" into the claims. In part, this was based on the patent applicant's response to an Official Action of a Patent and Trademark Office examiner in which the applicant had argued that in certain prior art cited by the examiner "the two electrode panels ... are not connected via a continuous uniform liquid film." Millburn I at 17. While the applicant's response could be read, as the district court did, to mean that patentability was being premised on the fact that the invention required a continuous, uniform film, in contrast to the prior art, the fact is that the examiner did not require amendment and the claims lack this limitation.
 
 
 5
 Claim interpretation is a matter of law. Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1567-68, 1 USPQ2d 1593, 1597, (Fed.Cir.), cert. denied, 481 U.S. 1052 (1987). Therefore, we review the lower court's interpretation to determine if it is legally correct.
 
 
 6
 The district court considered the question of infringement both under a literal infringement analysis and under the doctrine of equivalents. We find that the court erred in its literal infringement analysis. It is not the role of a district court (or this court) to rewrite claims of a patent. See Intervet America, Inc. v. Kee-Vet Laboratories, Inc., 887 F.2d 1050, 1054, 12 USPQ2d 1474, 1477 (Fed.Cir.1989). It is, of course, permissible to use prosecution history to interpret claims in order to ascertain what a patent applicant intended the claims to mean when the applicant was arguing their patentability and in considering whether prosecution history estoppel applies in a doctrine of equivalents analysis. However, the district court was not justified in rewriting the claims to insert a limitation not contained in the granted patent.
 
 
 7
 Claims 1 and 8 speak of "a thin film" and "applying a plurality of electrodes to said skin via said thin film " (emphasis added). Thus, the language of the claim itself makes clear that the invention relates to the application of more than one electrode to a single thin film.
 
 
 8
 However, the claims at issue do not require that all electrodes be contained in a single film, but only that at least one film on the skin contains a plurality of electrodes. Nor do the claims require that only one film be on the skin. Therefore, we hold that the prosecution history of the '074 patent does not limit the thin film recited in independent claims 1 and 8 to a single continuous, uniform film on which all of the electrodes are placed. The district court's error in adding claim limitations led the court to dismiss evidence relevant to the question of whether direct infringement had occurred.
 
 
 9
 The trial judge noted in her opinion that construing the claims in this manner, without the "continuous and uniform" film limitation, raised a concern that the patent was invalid. This issue, if properly raised, remains for the district court to determine.
 
 
 10
 We reverse the grant of summary judgment in Millburn I and remand for further proceedings consistent with this opinion.
 
 B. Best Mode
 
 11
 In Millburn II, the court found that the best mode requirement of 35 U.S.C. Sec. 112 had been violated and thus held that the '074 patent was invalid. Whether a patent application complies with the best mode requirement is a question of fact which depends on the patent applicant's state of mind. Spectra-Physics, Inc. v. Coherent, Inc., 827 F.2d 1524, 1535-36, 3 USPQ2d 1737, 1745 (Fed.Cir.), cert. denied, 484 U.S. 954 (1987). In particular, the inquiry must be undertaken to determine whether an applicant concealed a better mode of carrying out his invention than that which he disclosed. Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384-85, 231 USPQ 81, 94 (Fed.Cir.1986) (citing DeGeorge v. Bernier, 768 F.2d 1318, 1324, 226 USPQ 758, 763 (Fed.Cir.1985)) cert. denied 480 U.S. 947 (1987). The court found that the applicant for patent failed to meet the best mode requirement because the patent application failed to disclose that the commercial spray product based on the invention contained propylene glycol.
 
 
 12
 Millburn presented evidence that propylene glycol was included in the commercial product to function exclusively as a preservative despite propylene glycol's known humectant and electrical resistance properties.[1] The inclusion of preservatives generally in the conductive liquid is noted in the '074 specification; other components of the liquid are mentioned both generally and specifically. Parker Labs contested Millburn's explanation, and presented evidence that the inventor included propylene glycol in his commercial liquid formulation because it was the best mode contemplated by the inventor for carrying out his invention.
 
 
 13
 The use of propylene glycol is not expressly disclosed in the '074 patent. In light of the conflicting evidence, summary judgment on this issue is not appropriate. We reverse the grant of summary judgment in Millburn II and remand for trial to determine, inter alia, whether the applicant concealed the best mode contemplated for carrying out the invention.
 
 
 
 [1]
 The parties agreed at oral argument that information regarding the use of propylene glycol in the liquid was not confidential material